ORIGINAL

SEALED

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

2020 DEC 17  PM 2: 30

DEPUTY CLERK_____

| | |
|---|---|
| 3M COMPANY, | ) |
| | ) |
| Plaintiff, | ) Case No.: 3 - 2 0 C V 3 6 6 4 - K |
| | ) |
| v. | ) |
| | ) **SEALED / EX PARTE** |
| MOONLIGHT MEDICAL SUPPLIES & | ) |
| EQUIPMENT LLC d/b/a QUALITY | ) **DEMAND FOR JURY TRIAL** |
| RESOURCE COMPANY, | ) |
| | |
| Defendant. | |

---

## 3M COMPANY'S COMPLAINT AND REQUEST FOR INJUNCTIVE RELIEF

---

Plaintiff 3M Company ("3M") files its Complaint against Defendant Moonlight Medical Supplies & Equipment LLC d/b/a Quality Resource Company ("Moonlight Medical" or "Defendant") and alleges as follows:

### NATURE OF THE ACTION

1.      Defendant has engaged in the continued sale, and offer for sale, of counterfeit N95 respirator products falsely bearing 3M trademarks (as defined herein). These counterfeit products are not manufactured or authorized by 3M and there is no evidence that they meet the N95 standard or 3M's exacting quality controls. Accordingly, Defendant's sale of these counterfeit respirators is jeopardizing the health and safety of unsuspecting first responders and innocent customers who believe they are purchasing 3M-branded respirator products that meet the N95 standard. As a result, this unlawful activity is causing 3M and the public irreparable harm.

2.      This action also concerns Defendant's unlawful efforts to deceive the public into believing Defendant has a business relationship or affiliation with 3M when in fact Defendant has never had any relationship with 3M. This conduct causes 3M additional harm.

3.     This is an action for trademark counterfeiting, trademark infringement, unfair competition, and other Lanham Act violations—false endorsement, false association, and false designation of origin—arising from Defendant's continuous use of 3M's name without authorization and exploiting the COVID-19 pandemic for inappropriate commercial benefit.

4.     3M brings this action to help protect those on the frontlines of the fight against the pandemic and the public against Defendant's unlawful conduct and to protect the goodwill of its brand and products.

5.     Defendant has no prior or existing business relationship with 3M. Indeed, 3M has never had any contact with Defendant prior to this action.

6.     Further, Defendant is not a 3M authorized distributor of 3M-branded respirator products or any other 3M products.

7.     Defendant is deceiving potential customers to enter into sham transactions, namely the sale of inappropriately marked counterfeit 3M-branded respirator products—which are almost certainly inferior in quality, and as to which there is no evidence that they meet the N95 standard.

8.     Defendant is trading on 3M's name, branding, intellectual property, products, reputation for quality, and substantial goodwill after decades of 3M's investment to bring quality 3M-branded respirator products to users around the world.

9.     Defendant has knowingly created a fictitious association with 3M by utilizing 3M's branding, logo, and associated intellectual property to sell, and offer for sale, counterfeit respirator products bearing 3M trademarks. Defendant has even presented itself online as an expert on identifying counterfeit 3M products—all the while selling nothing but counterfeits.

10.    Defendant is engaging in price-gouging by selling purported 3M-branded N95 respirators for vastly inflated prices.

2

11. This conduct violates the Lanham Act for selling counterfeit goods, infringing and diluting 3M's trademarks, and engaging in unfair competition.

12. Defendant also violates the state of Texas's laws against trademark infringement, false advertising, deceptive trade practices, and dilution and injury to 3M's business reputation, as well as the common law against passing off counterfeit respirator products bearing 3M trademarks as being affiliated or associated with 3M.

13. 3M respectfully requests an *ex parte* order of seizure from the Court pursuant to 15 USC § 1116(d), to be enforced immediately by the United States Marshals Service, directing the United States Marshals Service to seize:

a. all products from Defendant's possession, custody, or control at its principal place of business, as set forth herein, which bear any 3M trademarks so that said products might be inspected and so that counterfeit products might be surrendered to 3M for destruction at Defendant's cost;

b. all products placed into the stream of commerce by Defendant which bear any 3M trademarks so that said products might be surrendered to 3M for destruction at Defendant's cost;

c. all electronic and hard copy records of Defendant's sourcing, supply, manufacture, and sales of products bearing any 3M trademarks so that they may be copied and provided to 3M.

14. 3M also requests that the Court preliminarily and permanently enjoin Defendant from using 3M's name, logo, branding, all associated trademarks and other intellectual property, and from selling counterfeit 3M-branded respirator products bearing 3M trademarks or any other 3M products.

15. Finally, 3M further requests the Court order Defendant to cease all false claims of affiliation with and representation of 3M, and to disgorge any profits that Defendant has made from these sham transactions. 3M will donate any monetary recovery in this action to COVID-19 charitable organizations.

## BACKGROUND

16. Throughout its history, 3M has been a leader in innovation and developing healthcare and safety products for industry and consumers. 3M's personal protective equipment ("PPE")—and in particular 3M's N95 respirator products—are considered the gold standard for public health protection.

17. Over the last hundred-plus years, 3M has invested hundreds of millions of dollars to advertise and promote its 3M-branded products to consumers throughout the world (including, without limitation, its 3M-branded respirator products). During this time, 3M continuously used its 3M trademarks in commerce.

18. Through this substantial investment and its extensive and continuous use of the famous 3M trademarks, 3M has established goodwill and an acclaimed reputation among the general public and healthcare and safety professionals for its high quality, safe and reliable products. Consequently, the 3M brand has become synonymous with high quality.

19. First responders, healthcare professionals, and other workers on the frontlines of the pandemic have come to depend on the quality and dependability that the 3M brand signifies.

20. Due to the unique, continued threat posed by COVID-19, and 3M's ability to play a leading role in helping protect public health, 3M has increased its production of respirator products to unprecedented levels. As a result, 3M is increasing its capacity to produce 3M-branded N95 respirator products and other respirator products to an annual rate of 2 billion. 3M's N95

4

respirator products are critical to those individuals and groups on the front lines combating COVID-19.

21.     In light of substantial ongoing fraud involving 3M's PPE, 3M is working with law enforcement—including the U.S. Department of Justice, the Federal Bureau of Investigation, and federal and state Attorneys General—to help them investigate and prosecute offenders selling counterfeit goods and committing other misconduct.

22.     3M has also established the COVID-19 Fraud Hotline, so that the public can report cases of suspected fraud in connection with PPE products to 3M.

23.     Including this action, 3M has filed 27 lawsuits, and served dozens of cease and desist letters against numerous bad actors perpetrating fraud amidst the COVID-19 pandemic.

## THE PARTIES

24.     Plaintiff 3M Company is a Delaware corporation, with a principal place of business and corporate headquarters located at 3M Center, St. Paul, Minnesota 55144. 3M is a diversified technology company with a global presence and is among the leading manufacturers of products for many of the markets it serves, including PPE such as 3M-brand N95 respirator products.

25.     On information and belief, Defendant Moonlight Medical is a limited liability company organized under the laws of the state of Texas with a principal place of business 1002 North Central Expressway, Suite 495, Richardson, Texas 70580. Like many entities formed with the intention of exploiting the COVID-19 pandemic, Moonlight Medical was formed in mid-2020, having been registered on April 13, 2020.

26.     According to Defendant's website— https://www.moonlight-medical.com/ — Defendant is a "distributor and manufacturer of Personal Protective Equipment for medical workers, first responders, and the general public." (*See* Ex. 1, Defendant's Website, About Us.)

5

Based on information obtained from various sources, Defendant is using the 3M trademarks in commerce to advertise, promote, offer for sale, and sell 3M-brand N95 respirators, including, for example, by providing purchasers with images of falsified documents bearing the 3M trademarks, which purport to be certifications for the counterfeit respirator products that Defendant is attempting to pass off as genuine 3M-brand N95 respirators.

## JURISDICTION AND VENUE

27. The claims for trademark counterfeiting, trademark infringement, unfair competition, false association, false endorsement, false designation of origin, trademark dilution, and false advertising, respectively, asserted in Claims for Relief I - V, infra, arise under the Trademark Act of 1946 (as amended; the "Lanham Act"), namely, 15 U.S.C. §§ 1051 *et seq*. Accordingly, this Court has original and subject-matter jurisdiction over Claims for Relief I – V pursuant to 28 U.S.C. §§ 1331, 1338(a) and (b), and 15 U.S.C § 1121(a).

28. The claims for deceptive acts and practices, false advertising, trademark infringement, dilution, and injury to business reputation asserted in Claims for Relief VI - VIII, *infra*, arise under Texas statutory and common law, and are so related to the federal claims asserted in Claims for Relief I - V, infra, that they form part of the same case or controversy. Accordingly, this Court has supplemental jurisdiction over Claims for Relief VI - VIII pursuant to 28 U.S.C. §§ 1338(b) and 1367(a).

29. Defendant has purposefully availed itself of the privilege of transacting business in this District. Defendant has also committed and intentionally directed tortious acts towards residents and governmental agencies while in this District. Defendant is a Texas limited liability company, with its principal place of business located in Richardson, Texas.

30. A substantial part of the events giving rise to the claims asserted, infra, occurred in this District. Therefore, venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2).

6

31.    Defendant is subject to personal jurisdiction in this District. Therefore, venue is also proper in this District pursuant to 28 U.S.C. § 1391(b)(3).

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

### I.    3M Company

32.    3M has grown from 1902 as a small-scale mining venture in Northern Minnesota to what it is today, namely: an industry-leading provider of scientific, technical, and marketing innovations throughout the world. Today, 3M's portfolio includes more than 60,000 goods and services, ranging from household and school supplies, to industrial and manufacturing materials, to medical supplies and equipment. 3M actively safeguards and protects its intellectual property. This includes maintaining substantial numbers of federal trademark registrations.

### A. The 3M Brand

33.    The 3M brand is associated with products for a wide range of medical supplies, devices, and PPE products, to include respirator products such as the 3M-branded N95 respirator products. As a result, 3M-branded products are highly visible throughout doctors' offices, hospitals, and other medical facilities where patients and medical professionals rely upon the quality, effectiveness, and integrity associated with the 3M brand.

### B. The Famous "3M" Marks

34.    Over the past century, 3M has invested hundreds of millions of dollars in advertising and promoting its 3M-brand products to consumers throughout the world (including, without limitation, its 3M-brand N95 respirator) under the standard-character mark "3M" and the 3M logo shown below (together, the "3M Marks"):



7

35. For decades, products offered under the 3M Marks have enjoyed enormous commercial success (including, without limitation, 3M-brand N95 respirators). In 2020 alone, 3M's sales have been in the billions of dollars, much of which included products sold utilizing the 3M Marks.

36. Over the same time period products offered under the 3M Marks have regularly been the subject of widespread, unsolicited media coverage and critical acclaim.

37. Based on the foregoing, consumers associate the 3M Marks uniquely with 3M and recognize them as identifying 3M as the exclusive source of goods and services offered under the 3M Marks. Based on the foregoing, the 3M Marks have also become famous among consumers not only in Texas but throughout the United States.

38. To strengthen 3M's common-law rights in and to its famous 3M Marks, 3M has obtained numerous federal trademark registrations, including, without limitation: (i) U.S. Trademark Reg. No. 3,398,329, which covers the standard-character 3M mark in Int. Classes 9 and 10 for, inter alia, respirators (the "'329 Registration"); (ii) U.S. Trademark Reg. No. 2,692,036, which covers the 3M logo for, *inter alia*, a "full line of surgical masks, face shields, and respiratory masks for medical purposes" (the "'036 Registration"); and (iii) U.S. Trademark Reg. No. 2,793,534, which covers the 3M design mark in Int. Classes 1, 5, and 10 for, inter alia, respirators (the "'534 Registration"). (*See* Exs. 2-7.)

39. Each of the foregoing Registrations is valid, in effect, and on the Principal Trademark Register of the United States Patent and Trademark Office ("USPTO").

40. Each of the foregoing Registrations is "incontestable" within the meaning of 15 U.S.C. § 1065. Accordingly, each Registration constitutes conclusive evidence of: (i) 3M's ownership of the 3M Marks; (ii) the validity of the 3M Marks; (iii) the validity of the registration

of the 3M Marks; and (iv) 3M's exclusive right to use the 3M Marks throughout the United States for, *inter alia*, respirators.

41.    3M's famous 3M Marks do more than identify 3M as the exclusive source of goods and services offered thereunder. The famous 3M Marks also signify to consumers that 3M-brand products offered under the 3M Marks are of the highest quality and adhere to the strictest quality-control standards. Now, more than ever, consumers rely on the famous 3M Marks' ability to signify that products offered under the 3M Marks are of the same high quality that consumers have come to expect of the 3M brand over the past century.

### C.    3M's Extensive Efforts to Combat the COVID-19 Pandemic

42.    Medical professionals and first responders throughout the world are donning extensive PPE as they place their health and safety on the line in the battle against COVID-19. As 3M states on the homepage of its website, it is committed to getting personal protective equipment to healthcare workers and first responders:



43.    Legitimate 3M-branded N95 respirator products reduce exposure to potentially harmful airborne particles and contamination when worn and used appropriately.

44.    However, as demand has skyrocketed for PPE, and in particular 3M-branded N95 respirator products, in the midst of the pandemic, bad actors have sought to exploit the situation.

9

45.     To help protect the public and healthcare professionals—on the front lines of the

COVID-19 pandemic—from trademark counterfeiting, misleading and substantially inferior PPE

products, as well as to protect 3M's goodwill and reputation in its 3M brand, 3M is working

diligently with law enforcement authorities, online e-commerce retailers, and others to combat

unethical and unlawful business practices related to 3M-branded N95 respirator products.

46.     As shown below, additional examples of 3M's efforts to combat trademark

counterfeiting, trademark infringement, and other unlawful activities during the COVID-19

pandemic include the following:

a.      3M posted on its website the U.S. per respirator, single case list price for

the most common models of its 3M-branded N95 respirator products so that the public can

identify and avoid inflated pricing. *See* https://multimedia.3m.com/mws/media/

186217 9O/get-the-facts-n95-respirator-pricing.pdf:

### U.S. List Prices for Common N95 Respirator Models

These list prices are per respirator.

These list prices represent suggested prices to end customers. 3M's prices to its authorized distributors are lower than these list prices.

An end customer's actual prices may be lower than these list prices, as negotiated between the end customer and its chosen distributor.

List prices for these models sold in Canada are similar on a currency-adjusted basis.

| Model | Type | List Price (USD) |
|---|---|---|
| 1804 | Surgical | $0.68 |
| 1804S | Surgical | $0.68 |
| 1860 | Surgical | $1.27 |
| 1860S | Surgical | $1.27 |
| 1870+ | Surgical | $1.78 |
| 8210 | Standard | $1.02 - $1.31 |
| 8210Plus | Standard | $1.18 - $1.50 |
| 8210V | Standard | $1.48 - $1.88 |
| 8110S | Standard | $1.08 - $1.37 |
| 8200 | Standard | $0.63 - $0.80 |
| 8511 | Standard | $2.45 - $3.11 |
| 9105 | Standard | $0.64 - $0.81 |
| 9105S | Standard | $0.64 - $0.81 |
| 9210+ | Standard | $1.40 - $1.78 |
| 9211+ | Standard | $2.68 - $3.40 |

b.      3M created a form on its website as well as a telephone hotline that the

public can use to report suspected fraud. Additionally, 3M has created online resources to

help spot incidents of price-gouging, identify counterfeiting, and ensure products are from

3M authorized distributors.

10



c. The 3M website further allows the public and interested parties to track 3M's enforcement activities against fraudulent activity in connection with 3M products, such as respirator products, during the COVID-19 pandemic. *See* https://news.3m.com/English/press-releases/press-releases-details/2020/3M-Expands-Actions-Globally-to-Fight-COVID-Fraud-Counterfeiting-and-Price-gouging/default.aspx:

At 3M, we are committed to help combat fraudulent activity in connection with 3M products and the COVID-19 pandemic.

**3M Enforcement Activities**

To help combat COVID-19 related fraud, 3M has established new 3M hotlines in the U.S. and around the world to help end-users and purchasers of 3M products identify authentic 3M respirators and ensure products are from 3M authorized distributors. 3M has not, and will not, raise prices for its respiratory protection products as a result of the COVID-19 pandemic. 3M has published the current U.S. list prices for many of the most common models of 3M N95 respirators to help customers identify and avoid inflated prices. We have also filed lawsuits in courts across the country against wrongdoers, terminated 3M distributors for engaging in price gouging or violating 3M policy, and collaborated with law enforcement and technology companies to combat fraud.

See the actions 3M has taken to fight fraud, counterfeiting, and price gouging tied to the COVID-19 pandemic.

Stay current on 3M's enforcement efforts.

3M ACTIONS BY THE NUMBERS (PDF, 111 KB)

IN THE NEWS

d. To date, 3M has fielded and investigated more than 9,400 fraud reports globally, filed 27 lawsuits, has been granted 16 temporary restraining orders or preliminary injunctions and three seizure orders. Additionally, over 15,200 false or deceptive social media posts, more than 13,400 fraudulent e-commerce offerings and at least 260 deceptive

domain names have been removed. *See* https://www.3m.com/3M/en_US/worker-health-safety-us/covid19/covid-fraud/ :



**Fighting Respirator Fraud, Counterfeiting, and Price Gouging**    

At 3M, we are committed to help combat fraudulent activity in connection with 3M products and the COVID-19 pandemic.

## II.  Defendant's Unlawful Conduct

47.    Even though 3M has been combatting counterfeiting and other unlawful activities seeking to exploit the demand for 3M-branded N95 respirator products during the pandemic, bad actors continue to take advantage of the public and unsuspecting users of respirator products. Defendant is engaged in such misconduct, which risks public health, impairs the supply chain supporting healthcare workers and others fighting the pandemic, and damages 3M's brand and goodwill.

48.    3M first learned of Defendant's misconduct on September 25, 2020, as a result of 3M's diligent social media and online monitoring for unlawful counterfeiting activity. 3M's monitoring efforts resulted in the discovery of a Facebook post, with images bearing a "www.moonlight-medical.com" watermark, in which Defendant publicized a "special offer" on 3M N95 1860 respirators:



Special Offer For People Who Work In The Front Line (Only 1500 Sets)
100% Authentic 20 Pieces 3M 1860 Respirators + 40 Pieces KN95 Masks
For only $199 !!!
Coupon : Freeshipping See more

49. 3M then reviewed Defendant's website where 3M noticed Defendant's promotion and offer for sale of purported 3M N95 1860 respirators. (*See* Ex. 8.) Based on certain indicators on the packaging, 3M recognized that the purported 3M N95 1860 respirators in the photos on Defendant's website were counterfeit.

50. Upon determining that Defendant's website showcased apparent counterfeit 3M N95 respirators, 3M engaged an investigator to make a sample purchase of 20 respirators from Defendant. Upon examination of the samples purchased, 3M confirmed that the respirators being offered for sale and sold by Defendant were in fact counterfeit.

51. Through 3M's further engagement of an investigator, Defendant represented to the investigator that it has an inventory of at least 20,000 3M N95 1860 respirators, which it offered for sale to the investigator at a bulk price of $6.50 per unit.

52. Defendant also represented to 3M's investigator that it can obtain and will resell 3M 8210 respirators at a price of $4.80 per unit, with an eight- to fifteen-day lead time.

13

53.     Despite having only been incorporated months prior, Defendant represented itself to be "one of the leading medical equipment supply providers in the greater Dallas-Ft. Worth area." Defendant also represented that it has sold PPE to medical professionals in the Fort Worth, Texas, area and received positive customer testimonials. (*See* Ex. 9.)

54.     Defendant's website advertised the sale of 3M respirators, including the "3M N95 1860 Respirator Mask," and Defendant represented that its supply of 3M N95 1860 respirators is "FDA Cleared for use as surgical mask" and that such masks have "99% BFE (Bacterial Filtration Efficiency) according to ASTM F2101." (*See* Ex. 10.) Defendant's website did not advertise any 3M 8210 respirators.

55.     Defendant advertised that its product is "100% Authetic[*sic*] 3M 1860 Respirator Mask," and offered to sell 20 units for $159.90, which Defendant indicates is a mark down from $199.00. *Id.* Buyers receive additional discounts if they purchase greater quantities of the item. (*See id.*)

56.     Defendant's mark-ups are approximately four to six times greater than 3M's listed prices, and the purported list price of $199.00 for 20 units would likewise be vastly above the appropriate pricing:

| Respirator | 3M's Per-Unit Price | Defendant's Per-Unit Price (20 units) | Approximate Markup |
|---|---|---|---|
| 1860 | $1.27 | $8.00 | 530% |
| | | Defendant's Per-Unit Price (20,000 units) | Approximate Markup |
| 1860 | $1.27 | $6.50 | 419% |
| 8210 | $1.02-$1.31 | $4.80 | 266-371% |

14

57.     Defendant claims that the 3M products it sells are authentic in a promotional

YouTube video purporting to describe the differences between authentic and counterfeit 3M N95

1860 respirators: https://www.youtube.com/watch?v=epNKIwAxSdc&feature=youtu.be



58.     Upon close examination of the video and based on an examination of certain

indicators on the packaging, 3M determined that *both* purported 3M N95 1860 respirators—the

purported fake ones *and* the purported real ones—shown in the video are in fact counterfeit.

Needless to say, the information provided by Defendant about how to identify counterfeits is also

wrong and Defendant is therefore cascading dangerous information to even more people.

15

59.     Defendant's misrepresentations and infringement of the 3M Marks are likely to confuse the public into falsely believing that Defendant is affiliated with 3M. 3M has gone to great lengths to make it known that 3M respirator products are only sold by 3M through its network of authorized distributors and wholesalers. *See, e.g.*, https://multimedia.3m.com/mws/media/ 1860221O/covid-n95-selling-facts.pdf. By offering substantial quantities of purported 3M N95 respirators for sale, Defendant fraudulently misrepresents that it has a legitimate source of supply for these products, thus leading unsuspecting purchasers to mistakenly believe or assume that Defendant is authorized by or otherwise associated with 3M.

60.     Notwithstanding its claims, Moonlight Medical is not an authorized 3M distributor and is not an authorized channel for the placement of an order for 3M respirators.

61.     3M has never had any affiliation with Defendant, whose fraudulent ploy during a global pandemic represents not only a new low in predatory profiteering, but also endangers lives and wastes precious time and resources by diverting buyers from legitimate sources of much-needed respirators. Despite 3M's extensive measures to combat price gouging and prevent illicit sales of 3M-branded N95 respirators, bad actors continue to attempt to exploit consumers. Defendant is a prime example of this unlawful behavior, which may well jeopardize public health and safety and risks and damages 3M's brands and reputation. Defendant's misrepresentations and infringement have caused confusion and are likely to continue to confuse the public into falsely believing that it is affiliated with 3M or an authorized 3M dealer.

62.     The full extent of Moonlight Medical's fraudulent operations is unknown at this time.

63.     3M has, in the past, attempted to confront purveyors of counterfeit 3M goods with cease and desist letters, instead of court actions. Repeatedly and consistently, such efforts have

been answered with claims that the seller was ignorant to the origins of the products and no longer possessed any such product. Were such a situation to be duplicated in the instant case, additional counterfeit respirators, in addition to those already in circulation, could be sold to unsuspecting purchasers who then wrongly rely on them for protection to prevent communication of a dangerous and potentially deadly virus.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

*(Trademark Counterfeiting - 15 U.S.C. §§ 1114(1), 1116(d))*

64.     3M repeats and incorporates by reference the foregoing statements and allegations in paragraphs 1- 63 of the Complaint as though set forth fully herein.

65.     Defendant is using spurious designations that are identical to the 3M Marks.

66.     Defendant has been using these spurious designations identical to 3M Marks for the purpose of advertising, promoting, offering for sale, and selling counterfeit 3M-branded respirator products.

67.     Defendant has used these spurious designations identical to 3M Marks in commerce knowing they are counterfeit to advertise, promote, offer for sale, and sell 3M-branded respirator products including, for example, providing purchasers with pictures and photocopies of falsified documents bearing the 3M Marks, which purport to be certifications for the masks that Defendant is attempting to pass off as 3M-brand N95 respirators.

68.     Defendant's use of the spurious designations identical to 3M Marks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products, as alleged, herein is causing, and is likely to continue to cause, customer confusion, and/or deception about whether Defendant's products originate with, and/or are sponsored or approved by, and/or offered with authorization from, 3M.

17

69. Based on 3M's longstanding and continuous use of its 3M Marks in United States commerce, as well as the federal registrations of the 3M Marks that are now incontestable, Defendant had actual and constructive knowledge of 3M's superior rights in and to the 3M Marks when Defendant began using spurious designations identical to 3M Marks as part of its efforts to deceive consumers and the general public.

70. Upon information and belief, Defendant adopted and used the 3M Marks in furtherance of Defendant's willful and deliberate scheme of trading upon the extensive customer goodwill, reputation, fame, and commercial success of products that 3M offers under its 3M Marks, including, without limitation, 3M-branded respirator products.

71. Upon information and belief, Defendant has made, and may continue to make, ill-gotten profits and gain from its unauthorized use of the 3M Marks, to which Defendant is not entitled at law or in equity.

72. Defendant's acts and conduct complained of herein constitute trademark counterfeiting in violation of 15 U.S.C. §§ 1114(1) and 1116(d).

73. 3M has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law. The damage suffered by 3M is exacerbated by the fact that Defendant is advertising and offering for sale non-3M branded respirator products during a global pandemic when these products are playing a critical role in helping to protect public health.

74. The acts of Defendant described herein have been willful and in bad faith, making this an exceptional case within the meaning of 15 U.S.C. § 1117(a).

75. 3M has been damaged by the acts of Defendant in an amount to be proved at trial and donated to charitable COVID-19 relief efforts.

18

76.     3M anticipates providing notice of this Complaint and requested relief to the United States Attorney for the Northern District of Texas.  3M has not otherwise publicized the relief requested herein.

77.     3M requests the relief set forth in the Prayer for Relief below.

## SECOND CLAIM FOR RELIEF

*(Trademark Infringement Under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1))*
*(Infringement of the Federally Registered 3M Marks)*

78.     3M repeats and incorporates by reference the statements and allegations in paragraphs 1- 77 of the Complaint as though set forth fully herein.

79.     3M is the exclusive owner of each of the federally registered 3M Marks.

80.     3M has the exclusive right to use each of the 3M Marks in United States commerce for, *inter alia*, advertising, promoting, offering for sale, and selling 3M-brand N95 respirators.

81.     3M's exclusive rights in and to each of the 3M Marks predate any rights that Defendant could establish in and to any mark that consists of "3M" in whole and/or in part.

82.     Each of the 3M Marks are fanciful and/or arbitrary when used for respirators and, therefore, are inherently distinctive.

83.     Each of the 3M Marks identify 3M as the exclusive source of products offered under the 3M Marks (including, without limitation, 3M-brand N95 respirators) and, therefore, the 3M Marks have acquired distinctiveness.

84.     Defendant is using the 3M Marks in commerce to advertise, promote, offer for sale, and sell 3M-branded N95 respirators, including, for example, by promoting and providing purchasers and potential purchasers with falsified product packaging and product documentation (and images thereof) bearing the 3M Marks, which purport to be certifications for the masks that Defendant is attempting to pass off as 3M-brand N95 respirators.

19

85.     Defendant's use of the 3M Marks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products, as alleged, herein, is causing, and is likely to continue to cause, consumer confusion, mistake, and/or deception about whether Defendant is 3M, and/or whether Defendant is a licensee, authorized distributor, and/or affiliate of 3M and/or products that 3M offers under its 3M Marks, including, without limitation, 3M-brand N95 respirators.

86.     Defendant's use of the 3M Marks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products, as alleged, herein, is causing, and is likely to continue cause, consumer confusion, mistake, and/or deception about whether Defendant and/or Defendant's products are affiliated, connected, and/or associated with 3M and/or products that 3M offers under its 3M Marks, including, without limitation, 3M-brand N95 respirators.

87.     Defendant's use of the 3M Marks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products, as alleged, herein is causing, and is likely to continue to cause, consumer confusion, mistake, and/or deception about whether Defendant and/or Defendant's products originate with, and/or are sponsored or approved by, and/or offered with authorization from 3M.

88.     3M has not consented to the use of its famous 3M Marks by Defendant.

89.     Defendant had both actual and constructive knowledge of 3M's superior rights in its 3M Marks due to 3M's decades-long, continuous use of its 3M Marks in United States commerce, and 3M's federal registration of the 3M Marks.

20

90.  Defendant made use of the 3M Marks in furtherance of Defendant's willful scheme of trading upon the extensive customer goodwill, reputation, fame, and commercial success of products that 3M offers under its 3M Marks, including 3M-branded respirator products.

91.  On information and belief, Defendant profited from its infringement of the 3M Marks.

92.  Defendant's acts and conduct described herein constitute trademark infringement in violation of 15 U.S.C. § 1114 (1)(a).

93.  3M has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless enjoined by the Court. The damage suffered by 3M is worsened due to Defendant's taking advantage of an unsuspecting public and medical health professionals during a global pandemic—when 3M's respirator products are critical to those frontline workers battling the COVID-19 pandemic. Defendant's misconduct directly creates a likelihood of confusion about 3M's role in the marketplace for respirator products.

94.  The acts of Defendant described herein have been willful and in bad faith, making this an exceptional case within the meaning of 15 U.S.C. § 1117(a).

95.  3M has been damaged by Defendant's misconduct in an amount to be proven at trial and donated to charitable COVID-19 relief efforts.

96.  3M requests the relief set forth in the Prayer for Relief below.

## THIRD CLAIM FOR RELIEF

*(Unfair Competition, False Association, False Endorsement, and False Designation of Origin Under Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A))*
*(Use of the 3M Marks)*

97.  3M repeats and incorporates by reference the foregoing statements and allegations in paragraphs 1- 96 as though set forth fully herein.

21

98.    On information and belief, Defendant's misconduct described herein constitutes unfair competition, false endorsement, false association, and/or false designation of origin in violation of 15 U.S.C. § 1125(a)(1)(A).

99.    On information and belief, Defendant's use of 3M's famous name and 3M Marks to advertise, market, offer for sale, and/or sell purported 3M-branded respirator products to customers, in general, and during a global pandemic such as COVID-19, specifically, also constitutes unfair competition in violation of 15 U.S.C. § 1125(a)(1)(A).

100.    Defendant also falsely represented itself as affiliated, connected, endorsed by, and/or associated with 3M and/or products that 3M offers under its 3M Marks, including, 3M-branded respirator products. Defendant sought to create the false impression that the products they purported to offer to healthcare workers and others originate from, and/or are sponsored or approved by, and/or offered with authorization from 3M.

101.    3M has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless enjoined by the Court.

102.    3M has been damaged by the acts of Defendant in an amount to be proved at trial and donated to charitable COVID-19 relief efforts.

103.    3M requests the relief set forth in the Prayer for Relief below.

## FOURTH CLAIM FOR RELIEF

*(Trademark Dilution Under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c))*
*(Dilution of the Famous 3M Marks)*

104.    3M repeats and incorporates by reference the foregoing statements and allegations in paragraphs 1- 103 of the Complaint as though set forth fully herein.

105.    Count IV is a claim for federal trademark dilution under 15 U.S.C. § 1125(c).

22

106.    The 3M Marks are famous. The 3M Marks were famous before, during, and after the time Defendant began using the 3M Marks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products (including 3M-branded respirator products).

107.    Defendant's use of 3M's famous 3M Marks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of counterfeit products (including 3M-branded respirator products) dilutes the distinctive quality of the famous 3M Marks, such that the famous 3M brand name and 3M Marks' established value and selling power will likely be diminished.

108.    Defendant's use of 3M's famous 3M Marks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of counterfeit products (including, without limitation, 3M-branded respirator products) dilutes the distinctive quality of the famous 3M name and 3M Marks, such that the famous 3M Marks' ability to identify 3M as the exclusive source of products offered under the 3M Marks (including 3M-branded respirator products) will be diminished.

109.    Defendant's use of 3M's famous 3M Marks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of counterfeit products (including 3M-branded respirator products), in general, and during a global pandemic such as COVID-19 specifically, dilutes the reputation of the famous 3M Marks, such that the famous 3M Marks' established ability to indicate the superior quality of Products offered under such marks (including 3M-branded respirator products), will be diminished.

110.    Defendant's misconduct also threatens to harm the reputation of the 3M Marks, constituting dilution by tarnishing the famous 3M Marks.

111. Defendant's acts and conduct complained of herein constitute trademark dilution in violation of 15 U.S.C. § 1125(c).

112. 3M has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless enjoined by the Court. The damage suffered by 3M is exacerbated by the fact that Defendant is opportunistically operating its illegal scheme and misrepresentations about 3M-branded respirator products during a global pandemic when those products are in great demand to help protect public health.

113. 3M has been damaged by the acts of Defendant in an amount to be proved at trial and donated to charitable COVID-19 relief efforts.

114. 3M requests the relief set forth in the Prayer for Relief below.

## FIFTH CLAIM FOR RELIEF

*(False Advertising Under Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B))*
*(Defendant's Website, Sales Agreement, and Agent's Activities)*

115. 3M repeats and incorporates by reference the foregoing statements and allegations in paragraphs 1- 114 of the Complaint as though set forth fully herein.

116. Through its externally facing webpage, and on information and belief through email advertisements, Defendant made statements to the general public—and medical health professionals—that contained false, misleading, and/or deceptive statements about the nature, characteristics, qualities, and/or geographic origin of Defendant and/or the products that Defendant allegedly had available for sale and constitute commercial advertising and/or commercial promotion.

117. Defendant's acts and conduct complained of herein constitute false advertising in violation of 15 U.S.C. § 1125(a)(1)(B).

24

118.    3M has suffered, and will continue to suffer, irreparable harm from Defendant's misconduct complained of herein, unless enjoined by the Court. The damage suffered by 3M is exacerbated by the fact that Defendant is opportunistically operating its illegal scheme and misrepresentations about 3M-branded respirator products during a global pandemic when those products are in great demand to help protect the public health. Such conduct invites public criticism of 3M and the manner in which 3M's respirators are being distributed and creates a likelihood of confusion about 3M's role in the marketplace for respirators. Whereas 3M's corporate values and brand image center around the application of science to improve lives, Defendant's conduct imminently and irreparably harms 3M's brand.

119.    3M has been damaged by the acts of Defendant in an amount to be proved at trial and donated to charitable COVID-19 relief efforts.

120.    3M requests the relief set forth in the Prayer for Relief below.

## SIXTH CLAIM FOR RELIEF

*(Trademark Infringement Under The Texas Trademark Act, Tex. Bus. & Com. Code § 16.102)*
*(Infringement of Registered 3M Marks)*

121.    3M repeats and incorporates by reference the statements and allegations in paragraphs 1 - 120 of the Complaint as though set forth fully herein,

122.    3M is the exclusive owner of each of registered 3M Marks.

123.    3M has the exclusive right to use each of the 3M Marks in United States commerce for, *inter alia*, advertising, promoting, offering for sale, and selling 3M-brand N95 respirators.

124.    Defendant is using the 3M Marks in commerce to advertise, promote, offer for sale, and sell 3M-branded N95 respirators, including, for example, by promoting and providing purchasers and potential purchasers with falsified product packaging and product documentation

25

(and images thereof) bearing the 3M Marks, which purport to be certifications for the masks that Defendant is attempting to pass off as 3M-brand N95 respirators.

125. Defendant's use of the 3M Marks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products, as alleged, herein, is causing, and is likely to continue to cause, consumer confusion, mistake, and/or deception about whether Defendant is 3M, and/or whether Defendant is a licensee, authorized distributor, and/or affiliate of 3M and/or products that 3M offers under its 3M Marks, including, without limitation, 3M-brand N95 respirators.

126. Defendant's use of the 3M Marks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products, as alleged, herein, is causing, and is likely to continue cause, consumer confusion, mistake, and/or deception about whether Defendant and/or Defendant's products are affiliated, connected, and/or associated with 3M and/or products that 3M offers under its 3M Marks, including, without limitation, 3M-brand N95 respirators.

127. Defendant's use of the 3M Marks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products, as alleged, herein is causing, and is likely to continue to cause, consumer confusion, mistake, and/or deception about whether Defendant and/or Defendant's products originate with, and/or are sponsored or approved by, and/or offered with authorization from 3M or vice versa.

128. 3M has not consented to the use of its famous 3M Marks by Defendant.

129. Based on 3M's longstanding and continuous use of its 3M Marks in United States commerce, as well as the registration of the 3M Marks, Defendant had actual and constructive

knowledge of 3M's superior rights in and to the 3M Marks when Defendant began using the 3M Marks as part its bad-faith scheme to confuse and deceive consumers, as alleged, herein.

130. Defendant adopted and used the 3M Marks in furtherance of Defendant's willful, deliberate, and bad-faith scheme of trading upon the extensive consumer goodwill, reputation, fame, and commercial success of products that 3M offers under its 3M Marks, including, without limitation, 3M-brand N95 respirators.

131. Defendant has made, and will continue to make, substantial profits and gain from its unauthorized use of the 3M Marks, to which Defendant is not entitled at law or in equity.

132. Defendant's acts and conduct complained of herein constitute trademark infringement in violation of the Texas Trademark Act.

133. 3M has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law. Such conduct has inspired intense public criticism of the manner in which 3M's respirators are being distributed and sold during the COVID-19 pandemic and significant confusion about 3M's role in the marketplace for masks that are essential to safeguarding public health.

## SEVENTH CLAIM FOR RELIEF

*(Dilution and Injury to Business Reputation Under The Texas Trademark Act, Tex. Bus. & Com. Code § 16.103)*
*(Dilution of, Injury to the 3M Brand and Famous 3M Marks)*

134. 3M repeats and incorporates by reference the statements and allegations in paragraphs 1 - 133 of the Complaint as though set forth fully herein.

135. The 3M Mark is a famous mark that is widely recognized by the public throughout the United States and the state of Texas, and the 3M Mark is a valid and protectable trademark.

27

136. Upon information and belief, Defendant's acts and conduct complained of herein constitute dilution and injury to business reputation in violation of Tex. Bus. & Com. Code § 16.103.

137. 3M has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.

138. 3M has been damaged by the acts of Defendant in an amount, currently unknown, to be proved at trial and then donated to charitable COVID-19 relief efforts, and 3M requests the relief set forth in the Prayer for Relief below.

## EIGHTH CLAIM FOR RELIEF

*(Unfair Competition and Passing Off Under The Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code §§ 17.41 et seq., and Texas Common Law) (Use of the 3M Marks)*

139. 3M repeats and incorporates by reference the statements and allegations in paragraphs 1 - 138 of the Complaint as though set forth fully herein.

140. The 3M Mark is a famous mark in the United States, including in the state of Texas.

141. Count VIII is a claim under Tex. Bus. & Com. Code § 17.46 and the Texas common law tort of unfair competition, which cover situations where a defendant attempts to pass off its goods or services as those of someone else by simulating the trademark owner's product, name, advertising, or marks. It is the umbrella for all statutory and non-statutory causes of action arising out of business conduct, which is contrary to honest practice in industrial or commercial matters.

142. Defendant began using the 3M Mark in connection with the advertising, marketing, and promotion of products subsequent to the 3M Mark becoming famous.

143. Defendant's advertising, marketing, and promotion of products, through its use of the 3M Mark, constitutes unfair competition against 3M.

28

144.    Defendant has caused the dilution of the distinctive quality of the 3M Mark and lessened the capacity of the 3M Mark to identify and distinguish 3M's products and services.

145.    Defendant's conduct has caused, and will continue to cause, irreparable harm to 3M.

146.    As result of Defendant's unlawful conduct, 3M is entitled to the injunctive remedies specified in the Prayer for Relief, damages in an amount, currently unknown, to be proved at trial and then donated to charitable COVID-19 relief efforts, applicable interest, and recovery of all reasonable attorneys' fees and costs incurred herein.

## PRAYER FOR RELIEF

**WHEREFORE**, based on Defendant's conduct complained of, herein, 3M asks that this Court:

A.    To enter an Order, finding in 3M's favor on each Claim for Relief asserted herein;

B.    Pursuant to 15 U.S.C. § 1116, the Texas Business and Commerce Code, and Texas common law:

1.    Preliminarily and permanently enjoining Defendant, its agents, servants, employees, officers and all persons and entities in active concert and participation with them from using the 3M Marks (or any other mark(s) confusingly similar thereto) for, on, and/or in connection with the manufacture, distribution, advertising, promoting, offering for sale, and/or sale of any goods or services, including, without limitation, 3M-brand N95 respirators;

2.    Preliminarily and permanently enjoining Defendant, its agents, servants, employees, officers and all persons and entities in active concert and participation with them from falsely representing itself as being a distributor, authorized retailer, and/or licensee of 3M and/or any of 3M's products (including, without limitation, 3M's 3M-brand

29

N95 respirator) and/or otherwise falsely representing to have an association or affiliation with, sponsorship by, and/or connection with, 3M and/or any of 3M's products; and

3. Ordering Defendant to file with the Court and serve upon 3M's counsel, within 30 days after service of the order of injunction, a report in writing under oath setting forth in detail the manner and form in which Defendant has complied with the injunction.

4. Pursuant to 15 USC § 1116(d), ordering the immediate seizure by the United States Marshal Service of goods and counterfeit 3M Marks involved in the violations set forth herein, directing the United States Marshal Service to seize:

a. all products from Defendant's possession, custody, or control at its principal place of business, as set forth herein, which bear any 3M Marks so that said products might be inspected and so that counterfeit products might be surrendered to 3M for destruction at Defendant's cost;

b. all products placed into the stream of commerce by Defendant which bear any 3M Marks so that said products might be surrendered to 3M for destruction at Defendant's cost;

c. all electronic and hard copy records of Defendant's sourcing, supply, manufacture, and sales of products bearing any 3M Marks so that they may be copied and provided to 3M.

C. Pursuant to 15 U.S.C. § 1117:

1. Order Defendant to provide 3M with a full accounting of all manufacture, importation, purchase, distribution and sale of products under the 3M Marks (including, without limitation, 3M-brand N95 respirators), as well as all profits derived therefrom;

2. Order Defendant to pay to 3M—so as to be donated charitably pursuant to subpart I, infra—all of Defendant's profits derived from the sale of infringing and counterfeit goods offered under the 3M Marks (including, without limitation, 3M-brand N95 respirators);

3. Award 3M treble actual damages—so as to be donated charitably pursuant to subpart I, infra—in connection with Defendant's infringement and counterfeiting of the 3M Marks;

4. Find that Defendant's acts and conduct complained of herein render this case "exceptional"; and

5. Award 3M—so as to be donated charitably pursuant to subpart I, infra—its costs and reasonable attorneys' fees incurred in this matter;

D. Pursuant to 15 U.S.C. § 1118, order the destruction of all unauthorized goods and materials within the possession, custody, and control of Defendant and Defendant's agents that bear, feature, and/or contain any copy or colorable imitation of the 3M Marks;

E. Award 3M pre-judgment and post-judgment interest against Defendant;

F. For any preliminary and permanent injunctive relief, that such relief extend to Defendant's agents, servants, employees, officers, and all persons and entities in active concert and participation with Defendant;

G. To order Defendant to file with the Court and serve upon 3M's counsel, within 30 days after service of the order of injunction, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction; and

H. Award 3M such other relief that the Court deems just and equitable.

31

## JURY DEMAND

Plaintiff requests a trial by jury on all issues so triable.

Respectfully submitted,

Dated: December 17, 2020

BARNES & THORNBURG LLP
*/s/ Mark C. Nelson*
Mark Nelson
Texas Bar No. 00794361
Juanita DeLoach
Texas Bar No. 24064218
Alicia Raines Barrs
Texas Bar No. 24109620
2121 N. Pearl Street, Suite 700
Dallas, TX 75201-2469
Telephone:    (214) 258-4200
Facsimile:    (214) 258-4199
Mark.nelson@btlaw.com
Juanita.deloach@btlaw.com
Alicia.rainesbarrs@btlaw.com

OF COUNSEL:
Patricia Volpe
(Pro Hac Vice To Be Filed)
Minnesota Bar No. 0392872
Autumn Gear
(Pro Hac Vice To Be Filed)
Minnesota Bar No. 0398236
225 South Sixth Street, Ste 2800
Minneapolis, MN 55402
Telephone:    (612) 333-2111
Facsimile:    (612) 333-6798
trisha.volpe@btlaw.com
autumn.gear@btlaw.com

*Attorneys for Plaintiff 3M Company*

# EXHIBIT 1



# Moonlight Medical Supplies & Equipment LLC

## About Us

### Who We Are

Moonlight Medical Supplies and Equipment LLC, is a Texas-based distributor and manufacturer of Personal Protective Equipment for medical workers, first responders, and the general public. By utilizing our strategic relationships with our global partners, we are able to provide the highest quality equipment and other much needed supplies for front line workers during the Covid-19 pandemic.

We pride ourselves in our expertise in fulfilling large quantity demands efficiently, providing exceptional service, offering fair & competitive pricing as well as fast shipping... these are the hallmarks under which Moonlight Medical Supplies & Equipment LLC was established.





Document title: Who We Are | Moonlight Medical Supplies &amp; Equipment LLC
Capture URL: https://www.moonlight-medical.com/blank-page
Capture timestamp (UTC): Wed, 16 Dec 2020 17:20:01 GMT

# About Us

### Who We Are

Moonlight Medical Supplies and Equipment LLC, is a Texas-based distributor and manufacturer of Personal Protective Equipment for medical workers, first responders, and the general public. By utilizing our strategic relationships with our global partners, we are able to provide the highest quality equipment and other much needed supplies for front line workers during the Covid-19 pandemic.

We pride ourselves in our expertise in fulfilling large quantity demands efficiently, providing exceptional service, offering fair & competitive pricing as well as fast shipping... these are the hallmarks under which Moonlight Medical Supplies & Equipment LLC was established.

Get in Touch



## Moonlight Medical Supplies & Equipment LLC

service@moonlight-medical.com

888-688-6618

1002 N Central Expy, Ste 495, Richardson, TX 75080

f  ✈  in

Office Hour

Monday - Friday: 9:00 AM–5:00 PM

Saturday & Sunday: Closed

Copyright © 2020 Moonlight Medical Supplies & Equipment LLC · All R



Let's Chat!
⚡ We'll reply as soon as we can

Document title: Who We Are | Moonlight Medical Supplies &amp; Equipment LLC
Capture URL: https://www.moonlight-medical.com/blank-page
Capture timestamp (UTC): Wed, 16 Dec 2020 17:20:01 GMT

# EXHIBIT 2

Int. Cls.: 9 and 10

Prior U.S. Cls.: 21, 23, 26, 36, 38, 39 and 44

**United States Patent and Trademark Office**

Reg. No. 3,398,329
Registered Mar. 18, 2008

## TRADEMARK
## PRINCIPAL REGISTER

# 3M

3M COMPANY (DELAWARE CORPORATION)
3M CENTER, 220-9E-01
2501 HUDSON ROAD
ST. PAUL, MN 55144

FOR: FULL LINE OF PARTICULATE, OZONE, GAS, VAPOR, CHEMICAL, BIOHAZARD AND OTHER RESPIRATORS, INCLUDING FILTERING FACE-PIECE RESPIRATORS AND ELASTOMERIC FACE-PIECE RESPIRATORS, OTHER THAN FOR ARTIFICIAL RESPIRATION; FULL LINE OF SELF-RESCUE AND PROTECTION APPARATUS, NAMELY, OXYGEN BREATHING UNITS, SUPPLIED-AIR RESPIRATORS, AND POWERED AIR-PURIFYING SYSTEMS (PAPRS) RESPIRATORS; CARTRIDGES, FILTERS, AIR TANKS AND OTHER COMPONENT PARTS FOR RESPIRATORS AND BREATHING UNITS; DUST MASKS; FULL LINE OF PROTEC-TIVE EYEWEAR, NAMELY, SAFETY GOGGLES, EYEGLASSES AND EYE SHIELDS; FACE-PROTEC-TION SHIELDS; EAR PLUGS AND EAR MUFFS TO ATTENUATE SOUND AND PROTECT HEARING; HARD HATS AND OTHER PROTECTIVE HEL-METS; WELDING HELMETS; AIR MONITORING DEVICES AND SENSORS FOR MEASURING GASES AND VAPOR CONCENTRATION LEVELS; GAS DETECTORS FOR DETECTING THE PRESENCE OF CARBON MONOXIDE AND OTHER GASES; THERMAL-IMAGING CAMERAS FOR USE BY FIREFIGHTERS AND FOR SEARCH AND RESCUE; ENVIRONMENTAL SAMPLING AND TESTING IN-STRUMENTS AND EQUIPMENT, NAMELY, ELEC-TRONIC LUMINOMETERS, AND RELATED SOFTWARE, DOCKING STATIONS AND BATTER-IES, FOR DETECTING, MEASURING AND ANA-LYZING CHEMICALS, BIOLOGICAL SUBSTANCES, FOOD RESIDUES AND MICROBES; MICROBIOLOGICAL AND CONTAMINANT-TEST-ING INSTRUMENTS AND EQUIPMENT, AND SOFTWARE RELATED THERETO, FOR DETECT-ING, MEASURING AND ANALYZING BACTERIA, INCLUDING PATHOGENS SUCH SALMONELLA AND LISTERIA, ALLERGENS, TOXINS, VITAMINS,

ANTIBIOTICS, AND OTHER ORGANISMS AND SUBSTANCES; DIAGNOSTIC APPARATUS FOR TESTING FOOD; LABORATORY EQUIPMENT AND SUPPLIES, NAMELY, TEST TUBES, TEST TUBE CAPS, DIP STICKS, RACKS, MICROTITRE PLATES AND TRAYS; SECURITY SCANNERS AND READERS FOR USE IN READING PASSPORTS AND OTHER FORMS OF IDENTIFICATION; ANTI-THEFT AND LIBRARY MATERIAL CHECK-OUT SECURITY SYSTEMS; RADIO FREQUENCY IDENTIFICATION (RFID) TAGS AND READERS; COMPUTER SOFTWARE FOR SUPPLY CHAIN MANAGEMENT FROM SOURCE TO CONSUMP-TION, NAMELY, FOR COLLECTING, STORING AND MANAGING DATA, AND REPORTING, EX-ECUTING AND TRACKING, IN CONNECTION WITH ENTERPRISE RESOURCE PLANNING, SUP-PLIER ENABLEMENT, MANUFACTURING, IN-VENTORY CONTROL AND WAREHOUSING, ORDER FULFILLMENT, SHIPPING, TRANSPOR-TATION AND DELIVERY; COMPUTER SOFT-WARE FOR USE IN THE MEDICAL AND HEALTH CARE FIELDS FOR PROCESSING CLAIMS FOR REIMBURSEMENT, MAINTAINING PATIENT AND MEDICAL RECORDS, CODING AND GROUP-ING DATA USED FOR MEDICAL AND HEALTH CARE RESEARCH, AND FOR REPORTING HEALTH TRENDS AND OTHER MEDICAL DATA; AND MEDICAL IMAGING SCANNERS AND RE-LATED SOFTWARE FOR CAPTURING IMAGES OF THE MOUTH AND TEETH FOR USE IN DENTIS-TRY, IN CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

FIRST USE 0-0-1960; IN COMMERCE 0-0-1960.

FOR: FULL LINE OF SURGICAL AND MEDICAL MASKS, RESPIRATORS AND FACE AND EYE SHIELDS FOR MEDICAL AND HEALTH-CARE RELATED PERSONNEL; FULL LINE OF ORTHO-PEDIC CASTINGS TAPES, SPLINTS, REINFORCING STRIPS, ELASTIC BANDAGES, AND SUPPORT BANDAGES AND COMPRESSION WRAPS; COM-POSITE FABRICS CONTAINING FIBERGLASS

AND RESINS FOR USE IN MAKING CASTS; PADDING FOR ORTHOPEDIC CASTS; ORTHOPEDIC CASTING TOOLS; FULL LINE OF STETHOSCOPES; FULL LINE OF SURGICAL MASKS, FACE SHIELDS, AND RESPIRATORY MASKS FOR MEDICAL PURPOSES; FULL LINE OF SURGICAL AND MEDICAL PROCEDURE DRAPES AND SHEETS; PATIENT ISOLATION DRAPES; MEDICAL-EQUIPMENT ISOLATION DRAPES; NON-ADHERENT SHEETING FOR BEDS, STRETCHERS AND EXAM TABLES; SURGICAL GOWNS; COMPRESSION BANDAGES; SURGICAL COMPRESSES; MEDICAL THERMOMETERS; FULL LINE OF MEDICAL ELECTRODES WITH OR WITHOUT CHEMICAL CONDUCTORS AND WET GELS FOR USE IN CARDIAC, ELECTROCARDIOGRAPH, ELECTROENCEPHALOGRAPH AND OTHER TYPES OF PATIENT MONITORING; LEADS AND CONNECTORS FOR USE WITH MEDICAL ELECTRODES; DEFIBRILLATION PADS; ELECTROSURGICAL PADS, PLATES AND ADAPTERS TO REMOVE RF CURRENT FROM A PATIENT'S BODY DURING ELECTROSURGERY; THERMAL COLD AND HOT PACKS FOR FIRST AID AND THERAPEUTIC PURPOSES; EYE PATCHES FOR MEDICAL USE; PADDING FOR USE BETWEEN MEDICAL EQUIPMENT AND PATIENTS OR FOR ELEVATING OR POSITIONING LIMBS; POUCHES FOR HOLDING SURGICAL AND MEDICAL INSTRUMENTS; ISOLATION POUCHES AND BAGS FOR STORING ORGANS, TISSUE AND OTHER BODY PARTS FOR TRANSPLANTS AND LABORATORY TESTING; FULL LINE OF STERILIZED AND NON-STERILIZED FASTENING AND COMPRESSION SURGICAL WRAPS; AUTOCLAVES FOR MEDICAL USE;

ORTHODONTIC APPLIANCES; DENTAL APPARATUS, NAMELY, INTRA-ORAL LIGHT SYSTEMS FOR CURING DENTAL MATERIALS, CERAMIC USED IN MAKING DENTAL CROWNS, BRIDGES AND OTHER RESTORATIVES; DENTAL INSTRUMENTS AND KITS COMPRISED OF SUCH INSTRUMENTS, NAMELY, MANDRELS, BURS, DISCS, CUPS, WHEELS, POINTS, BRUSHES AND ABRASIVE STRIPS USED TO GRIND, POLISH OR FINISH DENTAL RESTORATIVES; DENTAL INSTRUMENTS, NAMELY, SCISSORS, CRIMPING PLIERS, CONTOURING PLIERS AND IMPRESSION TRAYS; ELECTRONIC MIXERS FOR DENTAL COMPOUNDS; APPLICATORS AND DISPENSERS FOR DENTAL PRIMERS, CEMENTS, ADHESIVES, IMPRESSION MATERIALS AND RESTORATIVE MATERIALS; GLASS-FIBER POSTS USED IN DENTAL RESTORATIVE PROCEDURES; AND DENTAL PROPHYLAXIS ANGLES AND DENTAL PROPHYLAXIS CUPS FOR USE IN CLEANING TEETH AND DENTAL HYGIENE PROCEDURES, IN CLASS 10 (U.S. CLS. 26, 39 AND 44).

FIRST USE 0-0-1960; IN COMMERCE 0-0-1960.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

OWNER OF U.S. REG. NOS. 1,237,168, 2,793,534 AND OTHERS.

SER. NO. 77-257,496, FILED 8-16-2007.

TARAH HARDY, EXAMINING ATTORNEY

# EXHIBIT 3

| From: | TMOfficialNotices@USPTO.GOV |
|---|---|
| Sent: | Wednesday, April 2, 2014 11:00 PM |
| To: | trademarks@mmm.com |
| Subject: | Official USPTO Notice of Acceptance/Acknowledgement Sections 8 and 15: U.S. Trademark RN 3398329: 3M: Docket/Reference No. 34775 |

**Serial Number:** 77257496
**Registration Number:** 3398329
**Registration Date:** Mar 18, 2008
**Mark:** 3M
**Owner:** 3M Company

Apr 2, 2014

## NOTICE OF ACCEPTANCE UNDER SECTION 8

The declaration of use or excusable nonuse filed for the above-identified registration meets the requirements of Section 8 of the Trademark Act, 15 U.S.C. §1058. **The Section 8 declaration is accepted.**

## NOTICE OF ACKNOWLEDGEMENT UNDER SECTION 15

The declaration of incontestability filed for the above-identified registration meets the requirements of Section 15 of the Trademark Act, 15 U.S.C. §1065. **The Section 15 declaration is acknowledged.**

**The registration will remain in force for the class(es) listed below for the remainder of the ten-year period, calculated from the registration date, unless canceled by an order of the Commissioner for Trademarks or a Federal Court.**

**Class(es):**
009, 010

TRADEMARK SPECIALIST
POST-REGISTRATION DIVISION
571-272-9500

### REQUIREMENTS FOR MAINTAINING REGISTRATION

**WARNING: Your registration will be canceled if you do not file the documents below during the specified time periods.**

**Requirements in the First Ten Years**

**What and When to File:** You must file a declaration of use (or excusable nonuse) **and** an application for renewal between the 9th and 10th years after the registration date. See 15 U.S.C. §§1058, 1059.

**Requirements in Successive Ten-Year Periods**

**What and When to File:** You must file a declaration of use (or excusable nonuse) **and** an application for renewal between every 9th and 10th-year period, calculated from the registration date. See 15 U.S.C. §§1058, 1059.

**Grace Period Filings**

The above documents will be considered as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*\*\*The USPTO WILL NOT SEND ANY FURTHER NOTICE OR REMINDER OF THESE REQUIREMENTS.  THE REGISTRANT SHOULD CONTACT THE USPTO ONE YEAR BEFORE THE EXPIRATION OF THE TIME PERIODS SHOWN ABOVE TO DETERMINE APPROPRIATE REQUIREMENTS AND FEES.\*\*\***

To view this notice and other documents for this application on-line, go to http://tdr.uspto.gov/search.action?sn=77257496.  NOTE: This notice will only be available on-line the next business day after receipt of this e-mail.

# EXHIBIT 4

Int. Cls.: 1, 3, 5, 9, 10 and 28

Prior U.S. Cls.: 1, 4, 5, 6, 10, 18, 21, 22, 23, 26, 36, 38, 39, 44, 46, 50, 51 and 52

**United States Patent and Trademark Office**

Reg. No. 2,692,036
Registered Mar. 4, 2003

## TRADEMARK
## PRINCIPAL REGISTER



3M COMPANY (DELAWARE CORPORATION)
2501 HUDSON ROAD

3M CENTER

ST. PAUL, MN 55144 , BY MERGER, BY CHANGE OF NAME MINNESOTA MINING AND MANU-FACTURING COMPANY (DELAWARE COR-PORATION) ST. PAUL, MN 55144

FOR: ETHYLENE OXIDE FOR USE IN THE STERILIZATION OF MEDICAL, LABORATORY AND FOOD HANDLING INSTRUMENTS AND EQUIPMENT; CHEMICAL AND STEAM INDICA-TOR STRIPS AND TAPE FOR USE WITH AUTO-CLAVES AND FOR TESTING THE STERILITY OF MEDICAL INSTRUMENTS AND EQUIPMENT; IN-DICATOR STRIPS FOR TESTING GLUTARALDE-HYDE, ETHYLENE OXIDE AND OTHER CHEMICAL SOLUTIONS AND GASES; INDICATOR STRIPS FOR TESTING FOR BIOLOGICAL CONDI-TIONS FOR USE IN SAFETY-MONITORING; INDI-CATOR STRIPS FOR INDICATING TEMPERATURES FOR USE IN THE STERILIZA-TION AND SAFETY-MONITORING; ASSAY AND REAGENT TEST KITS AND COUNT PLATES FOR FIELD AND LABORATORY TESTING FOR E COLI, COLIFORM, AND OTHER BACTERIA OR CON-TAMINANTS IN MEAT, DAIRY PRODUCTS AND OTHER TYPES OF FOOD, AND FOR TESTING TO DETECT YEAST AND MOLD; AND STERILIZA-TION MONITOR TESTING KITS CONTAINING INDICATOR STRIPS OR TAPE, REAGENTS AND RECORD KEEPING CARDS OR BINDERS FOR TESTING THE STERILITY OF SURGICAL AND MEDICAL INSTRUMENTS, EQUIPMENT, AND

SUPPLIES , IN CLASS 1 (U.S. CLS. 1, 5, 6, 10, 26 AND 46).

FIRST USE 11-0-1990; IN COMMERCE 11-0-1990.

FOR: NON-MEDICATED SKIN CARE PRO-DUCTS, NAMELY, CLEANSERS, CREAMS, LO-TIONS, MOISTURIZERS, BARRIER CREAMS AND EMOLLIENTS, IN CLASS 3 (U.S. CLS. 1, 4, 6, 50, 51 AND 52).

FIRST USE 1-0-1996; IN COMMERCE 1-0-1996.

FOR: FULL LINE OF BANDAGES, DRESSINGS AND MEDICAL TAPES, NAMELY, ADHESIVE BANDAGES, BANDAGES FOR SKIN WOUNDS, SURGICAL BANDAGES, WOUND DRESSINGS, NON-STICK PADS FOR USE AS MEDICAL DRES-SINGS, MEDICATED COMPRESSES, TRANSPAR-ENT MEDICAL DRESSINGS, HYDROCOLLOID DRESSINGS, COLOSTOMY DRESSINGS, ULCER DRESSINGS, MEDICAL ADHESIVE TAPES, SURGI-CAL TAPES, AND WOUND AND SKIN CLOSURE ADHESIVE STRIPS WITH OR WITHOUT ANTIMI-CROBIAL SOLUTIONS; GAUZE; WOUND HEAL-ING FILLERS WITH OR WITHOUT GAUZE; MEDICATED SKIN CARE PREPARATIONS; SUR-GICAL DISINFECTANTS AND PREPPING SOLU-TIONS; MEDICATED ANTISEPTIC HAND WASHES; AND CULTURE MEDIA, BACTERIOLOGICAL MEDIA AND DIAGNOSTIC PREPARATIONS FOR CLINICAL OR MEDICAL LABORATORY USE, IN CLASS 5 (U.S. CLS. 6, 18, 44, 46, 51 AND 52).

FIRST USE 2-0-1991; IN COMMERCE 2-0-1991.

FOR: COMPUTER SOFTWARE FOR USE IN THE MEDICAL AND HEALTH CARE FIELDS FOR PROCESSING CLAIMS FOR REIMBURSEMENT, MAINTAINING PATIENT RECORDS, CODING AND GROUPING DATA USED FOR MEDICAL AND HEALTH CARE RESEARCH, AND FOR REPORTING HEALTH TRENDS AND OTHER MEDICAL DATA; AND FULL LINE OF RESPIRATORY FACE MASKS FOR FILTERING OUT GERMS, DUST AND POLLEN, IN CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

FIRST USE 5-0-1992; IN COMMERCE 5-0-1992.

FOR: FULL LINE OF ORTHOPEDIC CASTINGS TAPES, SPLINTS, REINFORCING STRIPS, ELASTIC BANDAGES, AND SUPPORT BANDAGES AND COMPRESSION WRAPS; COMPOSITE FABRICS CONTAINING FIBERGLASS AND RESINS FOR USE IN MAKING CASTS; PADDING FOR ORTHOPEDIC CASTS; ORTHOPEDIC CASTING TOOLS; FULL LINE OF STETHOSCOPES; FULL LINE OF SURGICAL MASKS, FACE SHIELDS, AND RESPIRATORY MASKS FOR MEDICAL PURPOSES; FULL LINES OF SURGICAL AND MEDICAL PROCEDURE DRAPES AND SHEETS; PATIENT ISOLATION DRAPES; MEDICAL-EQUIPMENT ISOLATION DRAPES; NON-ADHERENT SHEETING FOR BEDS, STRETCHERS AND EXAM TABLES; SURGICAL GOWNS; COMPRESSION BANDAGES; SURGICAL COMPRESSES; MEDICAL THERMOMETERS; FULL LINE OF MEDICAL ELECTRODES WITH OR WITHOUT CHEMICAL CONDUCTORS AND WET GELS FOR USE IN CARDIAC, ELECTROCARDIOGRAPH, ELECTRO-ENCEPHALOGRAPH AND OTHER TYPES OF PA-

TIENT MONITORING; LEADS AND CONNECTORS FOR USE WITH MEDICAL ELECTRODES; DEFIBRILLATION PADS; ELECTROSURGICAL PADS, PLATES AND ADAPTERS TO REMOVE RF CURRENT FROM A PATIENT'S BODY DURING ELECTROSURGERY; THERMAL COLD AND HOT PACKS FOR FIRST AID AND THERAPEUTIC PURPOSES; EYE PATCHES FOR MEDICAL USE; PADDING FOR USE BETWEEN MEDICAL EQUIPMENT AND PATIENTS OR FOR ELEVATING OR POSITIONING LIMBS; POUCHES FOR HOLDING SURGICAL AND MEDICAL INSTRUMENTS; ISOLATION POUCHES AND BAGS FOR STORING ORGANS, TISSUE AND OTHER BODY PARTS FOR TRANSPLANTS AND LABORATORY TESTING; AND FULL LINE OF STERILIZED AND NON-STERILIZED FASTENING AND COMPRESSION SURGICAL WRAPS, IN CLASS 10 (U.S. CLS. 26, 39 AND 44).

FIRST USE 6-0-1990; IN COMMERCE 6-0-1990.

FOR: ATHLETIC TAPE AND ATHLETIC SUPPORT AND COMPRESSION WRAPS FOR KNEES, WRISTS, ANKLES, ELBOWS, LEGS AND ARMS, IN CLASS 28 (U.S. CLS. 22, 23, 38 AND 50).

FIRST USE 0-0-1993; IN COMMERCE 0-0-1993.

OWNER OF U.S. REG. NOS. 1,181,981, 1,213,836, AND 1,234,260.

SER. NO. 76-137,885, FILED 9-29-2000.

ALICIA COLLINS, EXAMINING ATTORNEY

# EXHIBIT 5

Side - 1



**NOTICE OF ACKNOWLEDGEMENT**
**OF §15 DECLARATION**
**MAILING DATE: Mar 27, 2009**

The affidavit of incontestability filed in connection with the registration identified below meets the requirements of Section 15 of the Trademark Act, 15 U.S.C. §1065. The affidavit is acknowledged.

For further information about this notice, visit our website at: http://www.uspto.gov. To review information regarding the referenced registration, go to http://tarr.uspto.gov/.

| | |
|---|---|
| **REG NUMBER:** | **2692036** |
| **MARK:** | **3M AND DESIGN** |
| **OWNER:** | **3M COMPANY** |

Side - 2

UNITED STATES PATENT AND TRADEMARK OFFICE
COMMISSIONER FOR TRADEMARKS
P.O. BOX 1451
ALEXANDRIA, VA 22313-1451

FIRST-CLASS MAIL
U.S POSTAGE
PAID

James F. Voegeli
3M Innovative Properties Company
3M Center, 2501 Hudson Road
220 9E 01
St. Paul, MN 55144

# EXHIBIT 6

Int. Cls.: 1, 3, 5, 9, 10 and 28

Prior U.S. Cls.: 1, 4, 5, 6, 10, 18, 21, 22, 23, 26, 36, 38, 39, 44, 46, 50, 51 and 52

Reg. No. 2,793,534

**United States Patent and Trademark Office**      Registered Dec. 16, 2003

## TRADEMARK
## PRINCIPAL REGISTER



3M COMPANY (DELAWARE CORPORATION)
2501 HUDSON ROAD
3M CENTER

ST. PAUL, MN 55144 , BY MERGER, BY CHANGE OF NAME MINNESOTA MINING AND MANU-FACTURING COMPANY (DELAWARE COR-PORATION) ST. PAUL, MN 55144

FOR: ETHYLENE OXIDE FOR USE IN THE STERILIZATION OF MEDICAL, LABORATORY AND FOOD HANDLING INSTRUMENTS AND EQUIPMENT; CHEMICAL AND STEAM INDICA-TOR STRIPS AND TAPE FOR USE WITH AUTO-CLAVES AND FOR TESTING THE STERILITY OF MEDICAL INSTRUMENTS AND EQUIPMENT; IN-DICATOR STRIPS FOR TESTING GLUTARALDE-HYDE, ETHYLENE OXIDE AND OTHER CHEMICAL SOLUTIONS AND GASES; INDICATOR STRIPS FOR TESTING FOR BIOLOGICAL CONDI-TIONS FOR USE IN SAFETY-MONITORING; INDI-CATOR STRIPS FOR INDICATING TEMPERATURES FOR USE IN THE STERILIZA-TION AND SAFETY-MONITORING; ASSAY AND REAGENT TEST KITS AND COUNT PLATES FOR FIELD AND LABORATORY TESTING FOR E COLI, COLIFORM, AND OTHER BACTERIA OR CON-TAMINANTS IN MEAT, DAIRY PRODUCTS AND OTHER TYPES OF FOOD, AND FOR TESTING TO DETECT YEAST AND MOLD; AND STERILIZA-TION MONITOR TESTING KITS CONTAINING INDICATOR STRIPS OR TAPE, REAGENTS AND RECORD KEEPING CARDS OR BINDERS FOR TESTING THE STERILITY OF SURGICAL AND MEDICAL INSTRUMENTS, EQUIPMENT, AND

SUPPLIES , IN CLASS 1 (U.S. CLS. 1, 5, 6, 10, 26 AND 46).

FIRST USE 11-0-1990; IN COMMERCE 11-0-1990.

FOR: NON-MEDICATED SKIN CARE PRO-DUCTS, NAMELY, CLEANSERS, CREAMS, LO-TIONS, MOISTURIZERS, BARRIER CREAMS AND EMOLLIENTS, IN CLASS 3 (U.S. CLS. 1, 4, 6, 50, 51 AND 52).

FIRST USE 1-0-1996; IN COMMERCE 1-0-1996.

FOR: FULL LINE OF BANDAGES, DRESSINGS AND MEDICAL TAPES, NAMELY, ADHESIVE BANDAGES, BANDAGES FOR SKIN WOUNDS, SURGICAL BANDAGES, WOUND DRESSINGS, NON-STICK PADS FOR USE AS MEDICAL DRES-SINGS, MEDICATED COMPRESSES, TRANSPAR-ENT MEDICAL DRESSINGS, HYDROCOLLOID DRESSINGS, COLOSTOMY DRESSINGS, ULCER DRESSINGS, MEDICAL ADHESIVE TAPES, SURGI-CAL TAPES, AND WOUND AND SKIN CLOSURE ADHESIVE STRIPS WITH OR WITHOUT ANTIMI-CROBIAL SOLUTIONS; GAUZE; WOUND HEAL-ING FILLERS WITH OR WITHOUT GAUZE; MEDICATED SKIN CARE PREPARATIONS; SUR-GICAL DISINFECTANTS AND PREPPING SOLU-TIONS; MEDICATED ANTISEPTIC HAND WASHES; AND CULTURE MEDIA, BACTERIOLOGICAL MEDIA AND DIAGNOSTIC PREPARATIONS FOR CLINICAL OR MEDICAL LABORATORY USE, IN CLASS 5 (U.S. CLS. 6, 18, 44, 46, 51 AND 52).

FIRST USE 2-0-1991; IN COMMERCE 2-0-1991.

FOR: COMPUTER SOFTWARE FOR USE IN THE MEDICAL AND HEALTH CARE FIELDS FOR PROCESSING CLAIMS FOR REIMBURSEMENT, MAINTAINING PATIENT RECORDS, CODING AND GROUPING DATA USED FOR MEDICAL AND HEALTH CARE RESEARCH, AND FOR REPORTING HEALTH TRENDS AND OTHER MEDICAL DATA; AND FULL LINE OF RESPIRATORY FACE MASKS FOR FILTERING OUT GERMS, DUST AND POLLEN, IN CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

FIRST USE 5-0-1992; IN COMMERCE 5-0-1992.

FOR: FULL LINE OF ORTHOPEDIC CASTINGS TAPES, SPLINTS, REINFORCING STRIPS, ELASTIC BANDAGES, AND SUPPORT BANDAGES AND COMPRESSION WRAPS; COMPOSITE FABRICS CONTAINING FIBERGLASS AND RESINS FOR USE IN MAKING CASTS; PADDING FOR ORTHOPEDIC CASTS; ORTHOPEDIC CASTING TOOLS; FULL LINE OF STETHOSCOPES; FULL LINE OF SURGICAL MASKS, FACE SHIELDS, AND RESPIRATORY MASKS FOR MEDICAL PURPOSES; FULL LINE OF SURGICAL AND MEDICAL PROCEDURE DRAPES AND SHEETS; PATIENT ISOLATION DRAPES; MEDICAL-EQUIPMENT ISOLATION DRAPES; NON-ADHERENT SHEETING FOR BEDS, STRETCHERS AND EXAM TABLES; SURGICAL GOWNS; COMPRESSION BANDAGES; SURGICAL COMPRESSES; MEDICAL THERMOMETERS; FULL LINE OF MEDICAL ELECTRODES WITH OR WITHOUT CHEMICAL CONDUCTORS AND WET GELS FOR USE IN CARDIAC, ELECTROCARDIOGRAPH, ELECTRO-ENCEPHALOGRAPH AND OTHER TYPES OF PATIENT MONITORING; LEADS AND CONNECTORS FOR USE WITH MEDICAL ELECTRODES; DEFIBRILLATION PADS; ELECTROSURGICAL PADS, PLATES AND ADAPTERS TO REMOVE RF CURRENT FROM A PATIENT'S BODY DURING ELECTROSURGERY; THERMAL COLD AND HOT PACKS FOR FIRST AID AND THERAPEUTIC PURPOSES; EYE PATCHES FOR MEDICAL USE; PADDING FOR USE BETWEEN MEDICAL EQUIPMENT AND PATIENTS OR FOR ELEVATING OR POSITIONING LIMBS; POUCHES FOR HOLDING SURGICAL AND MEDICAL INSTRUMENTS; ISOLATION POUCHES AND BAGS FOR STORING ORGANS, TISSUE AND OTHER BODY PARTS FOR TRANSPLANTS AND LABORATORY TESTING; AND FULL LINE OF STERILIZED AND NON-STERILIZED FASTENING AND COMPRESSION SURGICAL WRAPS, IN CLASS 10 (U.S. CLS. 26, 39 AND 44).

FIRST USE 6-0-1990; IN COMMERCE 6-0-1990.

FOR: ATHLETIC TAPE AND ATHLETIC SUPPORT AND COMPRESSION WRAPS FOR KNEES, WRISTS, ANKLES, ELBOWS, LEGS AND ARMS, IN CLASS 28 (U.S. CLS. 22, 23, 38 AND 50).

FIRST USE 0-0-1993; IN COMMERCE 0-0-1993.

OWNER OF U.S. REG. NOS. 1,181,981, 1,234,260 AND OTHERS.

THE MATTER SHOWN IN BROKEN LINES INDICATES THE RELATIVE PLACEMENT OF THE MARK ON A TYPICAL PACKAGE FOR THE GOODS AND IS NOT CLAIMED AS A FEATURE OF THE MARK.

SER. NO. 76-138,263, FILED 9-29-2000.

ALICIA COLLINS, EXAMINING ATTORNEY

# EXHIBIT 7

Side - 1



**NOTICE OF ACCEPTANCE AND
ACKNOWLEDGEMENT OF §§8 & 15
DECLARATION
MAILING DATE: Dec 21, 2009**

The combined declaration of use and incontestability filed in connection with the registration identified below meets the requirements of Sections 8 and 15 of the Trademark Act, 15 U.S.C. §1058 and 1065. The combined declaration is accepted and acknowledged. The registration remains in force.

For further information about this notice, visit our website at: http://www.uspto.gov. To review information regarding the referenced registration, go to http://tarr.uspto.gov.

| | |
|---|---|
| **REG NUMBER:** | 2793534 |
| **MARK:** | **3M AND DESIGN** |
| **OWNER:** | **3M COMPANY** |

Side - 2

UNITED STATES PATENT AND TRADEMARK OFFICE
COMMISSIONER FOR TRADEMARKS
P.O. BOX 1451
ALEXANDRIA, VA 22313-1451

FIRST-CLASS MAIL
U.S POSTAGE
PAID

James F. Voegeli
3M Innovative Properties Company
3M Center, 2501 Hudson Road
220 9E 01
St. Paul, MN 55144

# EXHIBIT 8



# Moonlight Medical Supplies & Equipment LLC



# Things to consider when choosing a supplier.

### Variety of High Quality Masks

We offer a vast amount of healthcare grade, industrial masks (disposable and KN95). Our up-to-date industrial knowledge enables us to cater to your needs.

### Competitive Pricing

We are known for offering the top quality products, that the industry has to offer at fair and competitive pricing. Every one of our clients can trust that they are receiving our best prices upfront.

### Reliable Customer Service

We work in the filtration supply industry. We take the time to get to know you, and we always keep your best interests in mind when adding and adjusting products in our catalog.



# Featured Products

Let's Chat!
⚡ We'll reply as soon as we can



3M N95 1860 Respirator Mask(20 PCS)

$199.00 $159.90

4-Ply KN95 Masks (10 Pieces / box)

$15.90

5-Ply KN95 Face Mask (20 pieces) + 3-Ply Disposable Mask (100 pieces) Bundle

$69.00 $49.00

3M N95 Respirator Mask+ Kn95 Mask Bundle 〈60Pieces〉

$239.00 $199.00

View all products >

# What Our Customers Are Saying

Let's Chat!
⚡ We'll reply as soon as we can





"These masks are more comfortable and effective than any of the flimsy ones that our hospital supplies."

"The KN95 masks meet and exceed our expectations in quality and performance."

"COVID19 has changed our operational needs for our employees safety. Moonlight Medical Supplies and Equipment has been a steady resource for to meet those needs. Plus the customer service is fantastic"

**RN - Fort Worth Texas**

**MD OB/Gyn**

**Chris Jacobsen- COO**



# Frequently Asked Questions

For Well-Informed Medical Supply Decisions

Let's Chat!
We'll reply as soon as we can

Document title: Home | Moonlight Medical Supplies &amp; Equipment, LLC
Capture URL: https://www.moonlight-medical.com/
Capture timestamp (UTC): Wed, 16 Dec 2020 17:18:59 GMT
Page 4 of 7

## What evidence do we have that wearing a mask is effective in preventing COVID-19?

There are several strands of evidence supporting the efficacy of masks.

One category of evidence comes from laboratory studies of respiratory droplets and the ability of various masks to block them. An experiment using high-speed video found that hundreds of droplets ranging from 20 to 500 micrometers were generated when saying a simple phrase, but that nearly all these droplets were blocked when the mouth was covered by a damp washcloth. Another study of people who had influenza or the common cold found that wearing a mask significantly reduced the amount of these respiratory viruses emitted in droplets and aerosols.

A recent study published in Health Affairs, for example, compared the COVID-19 growth rate before and after mask mandates in 15 states and the District of Columbia. It found that mask mandates led to a slowdown in daily COVID-19 growth rate, which became more apparent over time. The first five days after a mandate, the daily growth rate slowed by 0.9 percentage-points compared to the five days prior to the mandate; at three weeks, the daily growth rate had slowed by 2 percentage-points. Another study looked at coronavirus deaths across 198 countries and found that those with cultural norms or government policies favoring mask-wearing had lower death rates.

## If we're practicing social distancing, do we sti need to wear masks?

A mnemonic that Chin-Hong likes is the "Three W's to ward COVID-19:" wearing a mask, washing your hands, and watc your distance.

"But of the three, the most important thing is wearing a mas said. Compared to wearing a mask, cleaning your iPhone or down your groceries are "just distractors." There's little evide that fomites (contaminated surfaces) are a major source of transmission, whereas there is a lot of evidence of transmiss through inhaled droplets, said Chin-Hong.

"You should always wear masks and socially distance," said Rutherford. "I would be hesitant to try to parse it apart. But, think mask wearing is more important."

### Reference

Bai, N., 2020. *Still Confused About Masks? Here's the Science Behin Face Masks Prevent Coronavirus.* UC San Francisco.


Let's Chat!
⚡ We'll reply as soon as we can



**Subscribe**

Get the latest update from us!

✉   Email Address

Submit

## Moonlight Medical Supplies & Equipment LLC

service@moonlight-medical.com

888-688-6618

1002 N Central Expy, Ste 495, Richardson, TX 75080

f  🐦  in

Office Hour

Monday - Friday: 9:00 AM–5:00 PM

Saturday & Sunday: Closed

Copyright © 2020 Moonlight Medical Supplies & Equipment LLC - All R



Let's Chat!
⚡ We'll reply as soon as we can

Document title: Home | Moonlight Medical Supplies &amp; Equipment, LLC
Capture URL: https://www.moonlight-medical.com/
Capture timestamp (UTC): Wed, 16 Dec 2020 17:18:59 GMT

# EXHIBIT 9



# Moonlight Medical Supplies & Equipment LLC



## Community Engagement

Moonlight Medical Supplies & Equipment, LLC has been making breakthroughs in the medical equipment industry. We are recognized as one of the leading medical equipment supply providers in the greater Dallas-Ft. Worth area. Our contributions have been featured in the media, and we're proud to share our latest news with you.

### RICHARDSON
#### POLICE DEPARTMENT

**Helping Local First Responders**

Since the COVID19 p

Let's Chat!
We'll reply as soon as we can

Document title: Community Engagement | Moonlight Medical Supplies &amp; Equipment LLC
Capture URL: https://www.moonlight-medical.com/press
Capture timestamp (UTC): Wed, 16 Dec 2020 17:21:11 GMT                                    Page 1 of 3

# Helping Local First Responders



Since the COVID19 pandemic outbreak the Richardson Police Department has seen an increased use and a growing need for masks to keep it's officers and staff safe. Replacement stocks are quickly being diminished and masks are becoming hard to find. Moonlight Medical Supplies and Equipment was happy to donate 8,000 daily disposable and 2,000 KN95 masks to the department to help meet this critical need and help support the department.

## Supporting Richardson's Fire Department

Supporting 'First Responders" is one of Moonlight Medical Supplies and Equipment's primary goals. Along with other area businesses we are proud to help replenish supplies of critically needed N95 masks with 4,000 KN95 masks as backup.

**Fort Worth City Hall 200 Texas Street**

## Mask Donations



We are always willi

... business owners who previously replenish supplies of critically needed N95 masks with 4,000 KN95 masks as backup.



## Mask Donations

We are always willing to consider a donation request for "First Responders", non-for profit groups or organizations. Please let us know your needs on our Donation Form.

If you would like to purchase and donate masks please call 888-688-6618 or email service@moonlight-medical.com

### Moonlight Medical Supplies & Equipment LLC

service@moonlight-medical.com

888-688-6618

1002 N Central Expy, Ste 495, Richardson, TX 75080

f  y  in

Office Hour

Monday - Friday: 9:00 AM–5:00 PM

Saturday & Sunday: Closed

Copyright © 2020 Moonlight Medical Supplies & Equipment LLC - All R...



Let's Chat!
We'll reply as soon as we can

# EXHIBIT 10



# Moonlight Medical Supplies & Equipment LLC

Home / Masks And Respirators / 3M N95 1860 Respirator Mask(20 PCS)

< Prev | Next >



Let's Chat!
We'll reply as soon as we can



## 3M N95 1860 Respirator Mask(20 PCS)

100% Authetic 3M 1860 Respirator Mask
3M 1860   20 pieces/Box   Medical Use
NIOSH Approved: N95
FDA Cleared for use as surgical mask
Helps protect against certain airborne biological particles
Fluid resistant and disposable
This health care particulate respirator and surgical mask helps provide respiratory protection against certain airborne biological particles. It is disposable and fluid resistant to splash and spatter of blood and other infectious material.
Meets CDC guidelines for Mycobacterium tuberculosis exposure control
FDA cleared for use as a surgical mask
99% BFE (Bacterial Filtration Efficiency) according to ASTM F2101
Fluid resistant according to ASTM F1862
Respirator contains no components made from natural rubber latex
Collapse resistant cup shape design
Braided headbands, cushioning nose foam, and light weight construction for comfortable wear
Suggested settings and applications: Operating Rooms, Clinics, TB Wards, Patient Care, Labor and Delivery, Infection Control Practices, Laboratory, emergency or pandemic preparedness planning, stockpiling, etc.
Note: for health and safety, Absolutely NO RETURN, NO EXCHANGE, NO REFUND, unless proven to be defective

~~$199.00~~ $159.90

Bulk savings

Select ⌄

Quantity

1

**Add to Cart**

## Moonlight Medical Supplies & Equipment LLC

service@moonlight-medical.com
888-688-6618
1002 N Central Expy, Ste 495, Richardson, TX 75080

f ✔ in

Office Hour
Monday - Friday: 9:00 AM–5:00 PM
Saturday & Sunday: Closed
Copyright © 2020 Moonlight Medical Supplies & Equipment LLC - All R



Let's Chat!
⚡ We'll reply as soon as we can

JS 44 (Rev. 10/20) **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| 3M COMPANY | Moonlight Medical Supplies & Equipment LLC d/b/a Quality Resource Company |

**(b)** County of Residence of First Listed Plaintiff **Ramsey, MN**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant **Dallas, TX**
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Mark Nelson, Juanita DeLoach, Alicia Raines Barrs
Barnes & Thornburg LLP, 2121 N. Pearl Street, Suite 700, Dallas, TX 75201-2469 (214) 258-4200

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question
   *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity
   *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | Product Liability | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | | [ ] 367 Health Care/ | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers' | Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | Liability | [ ] 368 Asbestos Personal Injury Product | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| | [ ] 340 Marine | Liability | | | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| | [ ] 345 Marine Product | | | [x] 840 Trademark | |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | Liability | **PERSONAL PROPERTY** | **LABOR** | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 720 Labor/Management | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | [ ] 360 Other Personal | [ ] 380 Other Personal Property Damage | Relations | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ |
| [ ] 196 Franchise | Injury | [ ] 385 Property Damage | [ ] 740 Railway Labor Act | [ ] 862 Black Lung (923) | Exchange |
| | [ ] 362 Personal Injury - Medical Malpractice | Product Liability | [ ] 751 Family and Medical Leave Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| | | | [ ] 790 Other Labor Litigation | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 791 Employee Retirement Income Security Act | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | | [ ] 895 Freedom of Information Act |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | **FEDERAL TAX SUITS** | [ ] 896 Arbitration |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 899 Administrative Procedure |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 871 IRS—Third Party 26 USC 7609 | Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
15 U.S.C. §§ 1114(1), 1116(d), 1125
Brief description of cause:
Action against defendant for the advertisement and offer for sale of counterfeit products.

**VII. REQUESTED IN COMPLAINT:**
[ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: [x] Yes [ ] No

**VIII. RELATED CASE(S) IF ANY** *(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE
December 17, 2020
SIGNATURE OF ATTORNEY OF RECORD
/s/ Mark C. Nelson

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket. **PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related cases, if any. If a related case exists, whether pending or closed, insert the docket numbers and the corresponding judge names for such cases. A case is related to this filing if the case: 1) involves some or all of the same parties and is based on the same or similar claim; 2) involves the same property, transaction, or event; 3) involves substantially similar issues of law and fact; and/or 4) involves the same estate in a bankruptcy appeal.

**Date and Attorney Signature.** Date and sign the civil cover sheet.